**WASHINGTON TROLLERS ASSOCIA-
TION et al., Plaintiffs,**

v.

**Juanita KREPS, Secretary of
Commerce, Defendant.**

Civ. No. C–77–358S.

United States District Court,
W. D. Washington,
Seattle Division.

Feb. 26, 1979.

**310**

Scott E. Stafne, Seattle, Wash., for plaintiffs.

Rebecca A. Donnellan, Land and Natural Resources Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WILLIAM W SCHWARZER, District Judge.

This case comes before the Court on cross-motions for partial summary judgment on the issue of the validity of regulations promulgated to implement the 1978 Pacific Salmon Fishery Management Plan. Plaintiffs are commercial salmon trollers and organizations representing trollers. In this action they seek to set aside regulations governing ocean salmon fishing off the coasts of Washington and Oregon.

The regulations under attack were issued by the Secretary of Commerce pursuant to the Fishery Conservation and Management Act of 1976. (16 U.S.C. §§ 1801 *et seq.*) The Act provides for establishment of eight regional councils, including the Pacific Fishery Management Council which was established soon after adoption of the Act. In December 1976 this council prepared a draft of a Pacific Salmon Fishery Management Plan for 1977. The Plan was approved in the spring of 1977 by the Secretary who then issued regulations implementing it on an emergency basis.

This action was filed on May 13, 1977. Plaintiffs' motion for a preliminary injunction or summary judgment was denied by Judge Sharp of the Western District of Washington on June 13, 1977. A motion to stay the application of the regulations was denied by the Ninth Circuit on June 17, 1977.

Preparation of the 1978 Salmon Fishery Management Plan began soon after the 1977 Plan went into effect in July, 1977. A draft, together with an environmental impact statement, was circulated extensively, and public hearings were held on it in six locations in the affected states during the fall of 1977. The Plan was revised on the basis of the public comments and transmitted to the Secretary for approval in January, 1978. It was approved on March 2, 1978, and regulations to implement it were put into effect on an emergency basis. Both the 1977 and 1978 regulations called, among other things, for minimum fish length and fishing gear restrictions and for closure of ocean salmon fishing to commercial trollers in northern waters from June 15 to June 30. The major change in the 1978 regulations was the relocation of the southern boundary of the management area from Tillamook Head to Cape Falcon, 11 miles further south on the Oregon coast. Because of the controversy over movement of the boundary, the Secretary established an additional public comment period. A panel of experts reviewed the Tillamook Head—Cape Falcon controversy and recommended adoption of the Cape Falcon line. The final regulations became effective on July 11, 1978.

Plaintiffs filed an amended complaint challenging the 1978 Plan on April 19, 1978. A second amended complaint was filed on June 19, 1978. Plaintiffs' current motion for partial summary judgment seeks declaratory relief against the 1978 Plan and regulations on the ground that the Plan does not conform to the requirements of the Act and that the regulations promulgated to implement it are invalid. The cross motion of defendant seeks to establish the validity of the 1978 Plan and regulations.[1]

### The Legislative Scheme

The Act adopts a somewhat convoluted scheme to achieve its purposes of conservation and management of fishery resources. Each regional fishery management council is required to prepare and submit to the Secretary a fishery management plan with respect to the geographical area for which it is responsible. (§ 1852(h)) The plan must contain certain information and assessments, and may in addition contain other provisions and recommendations. (§ 1853) The Secretary must review each plan to determine whether it is consistent with the national standards under the Act and with other applicable provisions of law. (§ 1854) If the Secretary approves it, the plan must be published, along with any proposed regulations, for comment by interested persons. Following the comment period, and after consideration of all relevant matters presented and a finding that the plan is consistent with the national standards and other provisions of law, the Secretary may promulgate regulations to implement it. (§ 1855(a)–(c)).

### Scope of Review

■ The Act contains the following provision for judicial review:

Judicial review.—Regulations promulgated by the Secretary under this chapter shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated; except that (1) section 705 of such title is not applicable, and (2) the appropriate court shall only set aside any such regulation on a ground specified in section 706(2)(A), (B), (C), or (D) of such title. (§ 1855(d))

---

1. Other issues raised by the second amended complaint which are not now before the Court include a due process attack on procedures utilized in the adoption of the Plan and regulations and an attack on the promulgation of the regulations as "emergency action."

The Act does not make the plan or the action of the Secretary in approving it reviewable as such. The specific provision for review of regulations, however, does not necessarily preclude review of other actions by the Secretary. The issue of reviewability must be determined in the light of the legislative scheme as a whole. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

▪ Under the scheme created by the Act, approval of the plan itself does not adversely affect anyone nor can it be considered final agency action for which there is no other adequate remedy in court. Any adverse effect results only from the regulations adopted to promulgate the plan and the Act provides an adequate remedy through judicial review of the regulations. Under the Administrative Procedure Act, therefore, plan approval standing alone would not be reviewable. (5 U.S.C. §§ 702, 704)

The Act appears to contemplate, however, that regulations to implement a fishery management plan may be promulgated only after the Secretary has found the plan to be consistent with the national standards under the Act and other applicable provisions of law. (§§ 1854(a) & (b), 1855(c)) Thus, the existence of a plan conforming to the statutory prerequisites is a condition to the Secretary's authority to promulgate regulations.

▪ This does not mean that the Court may make a *de novo* examination of the adequacy of the plan. The Secretary's finding that the plan complies with the statute is binding on the Court unless it is arbitrary, capricious or an abuse of discretion. (5 U.S.C. § 706(2)(A)) *Cf. Train v. Natural Resources Defense Council*, 421 U.S. 60, 75, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975); *ASARCO, Inc. v. Environmental Protection Agency*, 188 U.S.App.D.C. 77, 83–84, 578 F.2d 319,

325–26 (1978); *American Meat Institute v. Environmental Protection Agency*, 526 F.2d 442, 450 (7th Cir. 1975). It does mean that the Court, in passing on the validity of the regulations, must review the plan to the extent necessary to determine whether the Secretary abused her discretion in making her finding.

*Mootness*

▪ At the threshold, however, the Court is faced with the issue of mootness. The 1978 ocean salmon fishing season is over and the 1978 regulations have expired. New and somewhat more restrictive regulations are being prepared for adoption by the Secretary within the next two months. While those regulations will rest on an administrative record somewhat different from that before the Secretary in 1978, and while the Council is expected to amend the present Plan to include additional management options, it appears to the Court that the 1979 regulatory scheme will be basically similar to the 1978 scheme. The regulations, although somewhat different, will implement a plan similar to the 1978 Plan. Counsel for both sides indicated at oral argument that a ruling on the 1978 regulations would be relevant to action taken on the 1979 regulations.

It thus appears that the 1978 regulations are a part of a regulatory scheme having a continuing effect on the parties sufficient to preclude the action from being moot.[2] In addition, the action seems to fall within the exception for "short term orders, capable of repetition yet evading review," which can be considered by a court even if the issue were otherwise moot. *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 288, 55 L.Ed. 310 (1911). The exception requires both that there be more than a remote chance of repetition of the challenged conduct and that "the challenged action was in

2. In this connection, the preamble to the 1978 Plan states in part:

> The 1978 FMP is the second step in development of a comprehensive plan for the management of salmon stocks. The initial step was the FMP developed and implemented

during 1977. The success of this 1978 FMP is dependent upon cooperation by adjacent states, with regard to enforcement and salmon management. A comprehensive plan is currently being developed by the Council. . . . 43 Fed.Reg. 29791 (July 11, 1978)

its duration too short to be fully litigated prior to its cessation or expiration." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). The impending adoption of regulations for the 1979 season, and the short duration of that season, qualify this case under the exception.

*Validity of the Regulations*

[5] Plaintiffs do not attack the regulations directly. They point to no specific provision of the regulations as being unlawful. Instead their attack is focused on the Plan, based primarily on the argument that it fails to contain the descriptions required by Section 1853(a)(2). That section calls for

a description of the fishery, including, but not limited to, the number of vessels involved, the type and quantity of fishing gear used, the species of fish involved and their location, the cost likely to be incurred in management, actual and potential revenues from the fishery, any recreational interests in the fishery, and the nature and extent of foreign fishing and Indian treaty fishing rights, if any . .

Plaintiffs' principal complaint is that the Plan contains no description of inland fisheries. The Secretary points out, however, that the term "fishery" is defined as one or more stocks of fish, and any fishing for such stocks, "which can be treated as a unit for purposes of conservation and management." (§ 1802(7)) Inasmuch as the Secretary's management authority does not extend to inland fisheries (§§ 1811, 1856), it was not unreasonable for her to approve a description limited to the ocean salmon fishery under her jurisdiction.

Plaintiffs assert other deficiencies in the description, pointing to areas where the information provided is allegedly fragmentary or incomplete. The requirements of

the Act are, however, phrased in general and open-ended language. The potential sweep of that language is such that one can hardly imagine a responsive description which cannot be criticized as omitting some item of information. This is particularly true of the salmon fishing industry, having in mind the magnitude of the subject, the elusiveness of the quarry and the incomplete state of knowledge about it. Some of the information plaintiffs claim to be lacking, particularly economic and social data, simply does not exist or is not available, at least in the form sought.

In this connection, one must also consider that regulation of this industry has only recently begun and that studies are only now underway to collect and analyze much of the data called for by the Act. The 1978 Plan and regulations, moreover, were adopted for one year only, as the 1979 Plan and regulations are expected to be, pending development of a comprehensive plan. See Regulations, 43 Fed.Reg. 29791 (July 11, 1978).

The adequacy of compliance with the descriptive requirements of the Act must be judged in light of these considerations. So long as a good faith effort appears to have been made to supply available information, and no information material to the choices of management options made by the Secretary has been withheld, the Secretary's finding should be upheld, for the Act's requirements "should not serve as a dilatory device, obstructing [the Secretary] from proceeding with [her] primary mission." *FMC Corp. v. Train*, 539 F.2d 973, 979 (4th Cir. 1976).

With these considerations in mind, the Court has examined the Plan in the light of plaintiffs' objections. Inasmuch as the scope of review is limited, no useful purpose would be served by a detailed discussion of each of the many objections.[3] The Plan is

---

3. Plaintiffs argue, among other things, that the Plan's calculations of maximum sustainable yield and optimum yield are inadequate, 16 U.S.C. § 1853(a)(3), and that the Plan does not deal properly with foreign fishing, 16 U.S.C. § 1853(a)(4). Again, plaintiffs have only al-

leged that the Plan does not contain exactly what they think it should. They have failed to show that the Secretary's decision to approve the Plan was either arbitrary or capricious. Similarly, plaintiffs allege that the national standards requiring use of the "best scientific

some 157 pages in length. It contains recommended conservation and management measures (§ 1853(a)(1), Plan pp. 108–112), a fairly detailed description of the ocean salmon fishery (§ 1853(a)(2), Plan pp. 25–45), and maximum sustainable yield and optimum yield calculations (§ 1853(a)(3), Plan pp. 11–13 and 61–108). It states specifically that there is no excess yield available for foreign fishing (§ 1853(a)(4), Plan p. 23). The Plan specifies the data which must be submitted to the Secretary with respect to the fishery, as well as the methods by which this data will be collected (§ 1853(a)(5), Plan pp. 114–115). In addition the Plan contains information on the economic characteristics of the fishery, a description of the salmon habitat, discussion of treaties, international agreements and federal and state law, regulations and policies, and a description of some of the social and cultural factors affecting salmon fishermen.

It appears that a reasonable effort has been made to supply substantial amounts of information to meet the requirements of the Act and afford a basis for making a reasoned choice among management options. Plaintiffs have not pointed to any information which, though available, was withheld nor to any significant subjects entirely ignored.

The foregoing conclusion also disposes of plaintiffs' other contention that the deficiencies of the Plan frustrated meaningful public participation in the adoption process. Where a "failure to notify interested persons of the scientific research upon which the agency was relying actually prevented

the presentation of relevant comment, the agency may be held not to have considered 'all the relevant factors.'" *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240, 251 (2nd Cir. 1977). No such showing has, however, been made in this case. Plaintiffs have not indicated what relevant comments might have been made, nor have they shown that any inability to comment had a material effect on the Plan.

█ Other contentions raised by plaintiffs have been considered and found to be without merit.[4]

For the foregoing reason, the Court concludes that the grounds urged by plaintiffs as a basis for holding the 1978 regulations invalid are without merit. Were it not for other issues bearing on the validity of the regulations raised by the pleadings but not addressed on these motions, the Court would be prepared to enter judgment for defendant. Until those issues are disposed of, however, entry of any judgment would be premature.

Accordingly, counsel for plaintiffs is directed to advise the Court and the parties within fourteen days from the date of this order whether plaintiffs intend to litigate other issues raised in the second amended complaint. In the absence of such advice, judgment will be entered for defendant.

IT IS SO ORDERED.

---

information available," 16 U.S.C. § 1851(a)(2), and prohibiting management measures which discriminate between residents of different states, 16 U.S.C. § 1851(a)(4), were not satisfied by this Plan. The Plan, however, reflects consideration of both these standards, and the mere failure to apply them in the way plaintiffs would like does not make the Plan inadequate to support the regulations.

4. Plaintiffs have also charged that the Plan fails to comply with the guidelines developed by the Secretary to assure that a Plan is consistent with the national standards. 16 U.S.C. § 1851(b); 50 C.F.R. 60.23. Although the parties disagree on the question whether these

guidelines are binding, resolution of that question is not necessary to enable the Court to perform its limited review function. Since the Court is not reviewing the Plan directly, a failure of the Plan to comply with binding regulations has no direct effect on our review. Failure to comply with the guidelines is relevant only as it affects the Secretary's promulgation of regulations to implement the Plan. Again, plaintiffs have failed to demonstrate that the deviations from the guidelines make either the Secretary's approval of the Plan or her promulgation of the regulations arbitrary and capricious.