John A. HANSON et al., Plaintiffs,

v.

Philip M. KLUTZNIK et al., Defendants,

Japan Fisheries Association, Defendant-Intervenor.

Civ. No. A 80–331.

United States District Court, D. Alaska.

Jan. 28, 1981.

Norman A. Cohen, Donald C. Mitchell, Anchorage, Alaska, Kenneth R. Hamm, Bethel, Alaska, for plaintiffs.

James W. Moorman, Asst. Atty. Gen., Washington, D. C., Rene J. Gonzalez, Acting U. S. Atty., District of Alaska, Anchorage, Alaska by W. Malcom Logan, Asst. U. S. Atty., Anchorage, Alaska, Bruce C. Rashkow, Dept. of Justice, Washington, D. C., for defendants; Patricia Kraniotis, Patrick Travers, N.O.A.A., Washington, D. C., of counsel.

Houger, Garvey, Schubert, Adams & Barer by Stephen B. Johnson and Jay D. Hastings, Seattle, Wash., Ely, Guess & Rudd, Robert C. Ely, Anchorage, Alaska, for intervenor-defendant Japan Fisheries Association.

## OPINION

FITZGERALD, District Judge.

This is a civil action seeking to declare that regulations[1] promulgated by the Secretary of Commerce relating to foreign fishing for Western Alaska king salmon in the Bering Sea-Aleutian Islands area of the United States Fishery Conservation Zone are in violation of the Fishery Conservation and Management Act.[2] The plaintiffs also seek to compel the defendants to prohibit the interception of salmon in the Bering Sea area by foreign fishing fleets. Defendants have moved to dismiss the action contending that Section 1855(d) of the Act precludes judicial review and that plaintiffs have failed to exhaust their administrative remedies.

The Fishery Conservation and Management Act of 1976 was enacted to conserve and manage the fisheries resources off the coast of the United States. The Act establishes a two hundred mile fishery conservation zone contiguous to the territorial sea of the United States within which the United States exercises exclusive management authority.[3]

Under the Act, management of the various fisheries is implemented chiefly through eight regional fishery management councils.[4] These councils are required to prepare and submit to the Secretary of Commerce a fishery management plan with respect to each fishery within the council's geographical area.[5] The council management plan must provide for an optimum yield for the fishery based on a number of factors.[6] Plans and plan amendments are submitted to the Secretary for review and approval, and, if approved, are implemented through promulgation of regulations by the Secretary.[7] If a council fails to prepare a management plan, the Secretary is authorized to do so.[8] Once a plan has been submitted to or prepared by the Secretary the Act provides for public notice and comment periods.[9]

Following its establishment in 1976 the North Pacific Fishery Management Council began to develop a Bering Sea groundfish plan. Because the council had not submitted a plan prior to application by various foreign nations to fish in the Bering Sea, the Secretary prepared a Preliminary Fishery Management Plan, which was published February 15, 1977[10] for the Bering Sea and Aleutian Island Trawl and Herring Gillnet Fishery. Regulations implementing the preliminary plan were proposed on December 23, 1976[11] and issued as final regulations on February 11, 1977.[12] The preliminary plan and its accompanying regulations have subsequently been revised and reissued several times.[13] The council has also prepared a proposed fishery management plan which, along with proposed implementing regulations, are now in the public comment period.

The existing regulations allow a foreign vessel to retain only those species of fish specifically authorized.[14] All others are classified as prohibited. Each foreign vessel must minimize its catch of prohibited species and return them to the sea as soon as possible with a minimum of injury.[15] The prohibited species regulations were

1. 50 C.F.R. 611.13–.15 (1978).

2. 16 U.S.C. §§ 1801–82 (1978).

3. *See United States v. Kaiyo Maru No. 53*, 503 F.Supp. 1075 (D.Alaska 1980).

4. 16 U.S.C. § 1852(a).

5. *Id.* § 1852(h)(1).

6. *Id.* § 1853.

7. *Id.* § 1854.

8. *Id.* § 1854(c).

9. *Id.* § 1855.

10. 42 Fed.Reg. 9297.

11. 41 Fed.Reg. 55904.

12. 42 Fed.Reg. 8813.

13. *See* 42 Fed.Reg. 60682, 43 Fed.Reg. 59292, 45 Fed.Reg. 1028.

14. 50 C.F.R. 611.12, 611.14 (1978).

15. 50 C.F.R. 611.13 (1978).

originally promulgated by the Secretary on February 11, 1977[16] and have been repromulgated on two subsequent occasions, most recently in December of 1978.[17]

Plaintiffs claim that these regulations have the effect of permitting foreign vessels to catch large numbers[18] of Alaskan king salmon in the Bering Sea incidental to fishing for other species thereby violating the Act. They allege both a high mortality rate for these salmon and rising numbers caught in recent years. Plaintiffs seek to have the regulations declared void to the extent that they permit the catching of king salmon by foreign fishing vessels and ask that the United States be directed to prevent the continued foreign fishing that results in the incidental taking of king salmon.

Section 1855(d) of the Management Act contains the following provision regarding judicial review:

Judicial review.—Regulations promulgated by the Secretary under this chapter shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated . . . .

Defendants argue that plaintiffs' complaint challenges regulations promulgated under the Management Act and should, therefore, be dismissed as outside the limited jurisdiction provided by law. Plaintiffs argue the section does not apply to the various claims in the complaint.

■ Plaintiffs' first claim alleges failure of defendants to enforce provisions of the Management Act which prohibit foreign fishing vessels from engaging in any activity which can reasonably be expected to result in the catching, taking or harvesting of king salmon. Since foreign fishing vessels are authorized to pursue fishing activities by the regulations in question, plaintiffs' first claim, as stated in the complaint, constitutes a direct attack on the regulations and is barred by Section 1855(d).

■ As plaintiffs argue this first claim, however, they assert jurisdiction over this court based on mandamus.[19] Mandamus is proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt. The claim must be clear and certain and the duty of the officer ministerial. *Save the Dunes Council v. Alexander,* 584 F.2d 158, 162 (7th Cir. 1978); *Smith v. Grimm,* 534 F.2d 1346, 1352 (9th Cir. 1976). Such is not the case here where the Act imposes multiple duties.[20]

■ Plaintiffs' second and third claims are directed to the regulations having to do with prohibited species contending the regulations should be declared void. But any challenge to the regulations necessarily should have been instituted within thirty (30) days after the regulations were promulgated.[21]

■ Plaintiffs' fourth claim for relief alleges the preliminary plan for the Bering Sea groundfish fishery is inconsistent with national standards for fishery conservation and is not based upon the best scientific evidence available. It has been held that approval of a preliminary plan is not directly reviewable, except as the plan should affect the Secretary's promulgation of implementing regulations. *Washington Trol-*

16. 42 Fed.Reg. 8813.

17. 42 Fed.Reg. 60682, 43 Fed.Reg. 59292.

18. Over 100,000 fish are alleged to have been taken by foreign vessels in 1979.

19. 28 U.S.C. § 1361.

20. *See e. g.* 16 U.S.C. §§ 1801(a)(7) and (b)(6) (1978) urging development of the Alaskan bottomfish fishery.

21. Plaintiffs claim Section 1855(d) precludes only judicial challenges to regulations invalid on their face and not invalid as applied. There is little in the act to support this contention. Rather the scheme envisioned by the act allows the Secretary or council the opportunity to use their expertise to react to new information made available as regulations are applied. Judicial scrutiny is withheld until new regulations are promulgated or unless the agency fails to act.

*lers Ass'n. v. Kreps,* 466 F.Supp. 309 (W.D. Wash.1979). Deviation from national standards is relevant only to the extent that it reveals the Secretary's action to implement the plan is arbitrary and capricious. *Id.* at 314 n.4. Plaintiffs' fourth claim for relief does not make such allegations.

■ Moreover, even if the complaint were to be read as claiming arbitrary and capricious action on the Secretary's part, relief would not be appropriate at this time. The Management Act provides an administrative scheme to remedy any shortcomings in the management plan made apparent by newly acquired information.[22] Since Section 1855 applies only to regulations, the 30-day limit may not necessarily bar a challenge to the Secretary's decision not to act on new information. *See* Comment, "Judicial Review of Fishery Management Regulations Under the Fishery Conservation and Management Act of 1976", 52 Wash.L.R. 599, 607–609 (1977). However, judicial relief would be inappropriate until the occurrence of final agency action. *Cf. FTC v. Standard Oil,* —— U.S. ——, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Judicial intervention into the agency process would deny the agency the opportunity to apply its expertise. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1965).

Plaintiffs' fifth claim for relief alleges that the defendants refuse to enforce the regulations to prevent foreign fishing vessels from harvesting king salmon in the Bering Sea in violation of 16 U.S.C. § 1861. Like the first claim for relief, this claim also constitutes an attack on regulations which by their terms permit the fishing activity which defendants now complain of.

Hence, this claim is also barred by Section 1855(d).

In summary plaintiffs' claims are barred by Section 1855(d) of the Act which limits the judicial review of regulations promulgated under the Management Act. Moreover, even if dismissal were not statutorily required, the case would still require dismissal for failure of plaintiffs to exhaust their administrative remedies. The incidental catch of salmon has been the subject of international negotiations and ongoing scientific studies. The closing of the Bering Sea fishery will have an undetermined impact not only on the salmon stock but on other fish stocks as well. Given these circumstances, the agency must be allowed to apply its expertise prior to judicial review. *Marshall v. Burlington Northern, Inc.,* 595 F.2d 511, 513 (9th Cir. 1979). The incidental catch of salmon is the subject of inquiry in several administrative proceedings.[23] It is clear in balancing the plaintiffs' need for judicial resolution of this matter against the need for agency expertise in this area [24] that administrative process should be exhausted before judicial intervention begins.

The motions to dismiss are GRANTED and plaintiffs' complaint is DISMISSED.

---

**22.** 16 U.S.C. § 1852(h)(5) and (6) (1978).

**23.** Plaintiffs filed a petition with the National Marine Fisheries Service requesting an amendment to the preliminary management plan closing portions of the Bering Sea from October 1 to March 31 each year. This petition was denied on December 19, 1980 by the Assistant Administrator for the National Oceanic & Atmospheric Administration who noted that additional amendments to the preliminary management plan had not been ruled out and that a

modified salmon savings closure was under active consideration for implementation in 1981. A fishery management plan for the Bering Sea is near completion and contains provisions dealing with the problem. Additionally, the council is undertaking an ongoing study of incidental and prohibited species conduct.

**24.** *See Montgomery v. Rumsfeld,* 572 F.2d 250, 253 (9th Cir. 1978).