# Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils

The appointed members of Regional Fishery Management Councils established under the Magnuson Fishery Conservation and Management Act and other personnel of those Councils are not executive branch employees for purposes of Executive Order No. 12674 and its implementing regulations, and thus are not subject to that Order.

December 9, 1993

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

This memorandum responds to your request[1] for our opinion whether Executive Order No. 12674, 3 C.F.R. 215 (1990) ("Order"), and the regulations implementing it apply to officials of the Regional Fishery Management Councils ("Councils") established under the Magnuson Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1882 ("Magnuson Act" or "FCMA").[2] The officials in question are the Council members appointed by the Secretary of Commerce ("Secretary") and the Councils' executive directors and administrative employees. We conclude that, under the unusual statutory scheme of the Magnuson Act, appointed Council members and the other Council personnel under consideration are not executive branch "employees" subject to the Order.

## I.

The Magnuson Act created eight Councils from regional groupings of coastal States and gave them certain authority concerning ocean fisheries to the seaward of their member States. See 16 U.S.C. § 1852(a). The Secretary appoints a majority of the voting membership for three-year terms. Id. § 1852(a)-(b). The remaining members, voting and nonvoting, are State and Federal officials who serve ex officio. Id. § 1852(b)-(c).[3] The appointed Council members may be removed by the Secretary only "for cause . . . if the Council concerned first recommends removal

---

[1] See Letter for Timothy E. Flanigan, Assistant Attorney General, Office of Legal Counsel, Department of Justice, from Department of Commerce (July 17, 1992) ("Commerce Letter").

[2] The Order was amended by Exec Order No. 12731, 3 C F.R 306 (1991), in respects not pertinent to this discussion. The Office of Government Ethics' regulations implementing the Order took effect on February 3, 1993. See 57 Fed. Reg. 35,006 (1992) (to be codified at 5 C.F R. pt. 2635).

[3] The Pacific Council also has one nonvoting member appointed by, and serving at the pleasure of, the Governor of Alaska 16 U S.C. § 1852(c)(2). We understand from discussions with your staff that the term "members," as used in the Commerce Letter, is limited to members of a Council appointed by the Secretary. Consequently, we have focused our analysis on this category. We use the term "appointed" Council members to distinguish such members from those who serve ex officio.

by not less than two-thirds of the members who are voting members." *Id.* § 1852(b)(5).

Each Council has the authority to appoint an executive director and such other administrative employees as the Secretary deems necessary. *Id.* § 1852(f)(1). The Secretary pays appointed Council members "the daily rate for GS-16 of the General Schedule, when [such member is] engaged in the actual performance of duties for [a] Council." *Id.* § 1852(d).[4] The Secretary also pays "appropriate compensation" to the executive director and administrative employees. *Id.* § 1852(f)(7). The Administrator of General Services furnishes the Councils with such offices and office supplies as any agency would receive. *Id.* § 1852(f)(4).

The Councils advise the Secretary in formulating fishery management plans within their respective geographical areas. *Id.* § 1852(h). The management plans must conform to national standards, *id.* § 1851, with respect to which the Secretary has promulgated implementing guidelines. *See* 50 C.F.R. pt. 602 (1993). The Councils generally are required to open their proceedings to the public and must hold hearings to consider comments from interested persons during the development of management plans. 16 U.S.C. § 1852(h)(3). After a management plan is prepared by a Council, it is submitted to the Secretary, who reviews it and either approves, disapproves, or partially disapproves it. *Id.* § 1854(a), (b). If a Council fails to develop and submit a management plan, or fails to change a plan that the Secretary has partially or completely disapproved, the Secretary may prepare a management plan for that region. *Id.* § 1854(c). However, "the Secretary may not include in any fishery management plan, or any amendment to any such plan, prepared by him, a provision establishing a limited access system [with respect to a fishery] . . . unless such system is first approved by a majority of the voting members, present and voting, of each appropriate Council." *Id.* § 1854(c)(3). After a management plan has been prepared or approved by the Secretary, the Secretary promulgates implementing regulations. *Id.* § 1855(a). The Secretary is responsible for the enforcement of the FCMA and implementing regulations. *See id.* §§ 1858, 1861.

In the words of the FCMA's principal sponsor, Senator Warren G. Magnuson, the Councils

> are unique among institutions that manage natural resources. They are neither state nor federal in character, although they possess qualities of each. Their powers are derived from the constitutional authority of the federal government, yet the Councils are self-determinant in their own affairs. Enforcement and administration of the Councils' plans and regulations are carried out by the responsible federal agencies.

---

[4] The GS-16 level in the General Schedule no longer exists *See* Exec. Order No 12786, 3 C F R 376, 378 (1992).

\*   \*   \*

Although the Councils are to be relatively independent, each Council must operate within the uniform standards promulgated by the Secretary of Commerce that govern the administration of the Act. The principal function of the Councils is to formulate fishery management plans upon which management and conservation regulations are to be based.

Warren G. Magnuson, *The Fishery Conservation and Management Act of 1976: First Step Toward Improved Management of Marine Fisheries*, 52 Wash. L. Rev. 427, 436-37 (1977).

## II.

The Order's preamble recites that it is intended to set forth "standards of ethical conduct for all executive branch employees."[5] The term "employee" is defined only as follows: "any officer or employee of an agency, including a special Government employee." *Id.* § 503(b).[6] An "agency" means any "executive department . . ., Government corporation . . ., or an independent establishment in the executive branch," as those terms are defined in 5 U.S.C. §§ 101, 103, and 104. *Id.* § 503(c). A "Special Government employee" is "as defined in 18 U.S.C. 202(a)." *Id.* § 503(e).[7]

The Commerce Letter concludes that the Order and its implementing regulations do not apply to appointed Council members and staff. It reasons that because the authority for prescribing regulations governing standards of conduct is derived from 5 U.S.C. § 7301,[8] the definitions of "officer" and "employee" in title 5 should determine whether the Order applies to the Councils.[9] The Commerce Letter fur-

---

[5] The Order supersedes Exec. Order No 11222 *See* 56 Fed. Reg. 33,778, 33,778 (1991)

[6] As the Commerce Letter notes, the terms "officer" and "employee" do not receive any further definition, thus making the Order s definition of "employee" partly circular

[7] Section 202(a) of title 18 defines a "special Government employee" in part as any.
officer or employee of the executive . . . branch     who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis.

[8] 5 U S C. § 7301 provides that "[t]he President may prescribe regulations for the conduct of employees in the executive branch."

[9] An "officer" under 5 U.S C § 2104 is:
[A]n individual who is —
(1) required by law to be appointed in the civil service by one of the following acting in an official capacity—
    (A) the President;
    (B) a court of the United States;
    (C) the head of an Executive agency, or
    (D) the Secretary of a military department,

ther argues, in reliance on a 1976 opinion of the Acting General Counsel of the former United States Civil Service Commission,[10] that "Council staffs and members are not Federal employees for the purposes of 5 U.S.C. § 2105 because although the public members of the Councils are appointed by a Federal official (namely the Secretary of Commerce) and Council members perform a Federal function authorized by statute (*e.g.*, preparing fishery management plans), there [is] no supervisory relationship between the Secretary of Commerce and the Councils within the meaning of section 2105(a)(3)." Commerce Letter at 5.[11]

### III.

We accept the premise of the Commerce Letter that the terms "officer" and "employee," as used in § 503(b) of the Order, are identical in scope and meaning with the terms "officer" and "employee" as used in 5 U.S.C. §§ 2104 and 2105. We further believe that, as those terms are used in 5 U.S.C. §§ 2104 and 2105, they do not reach the appointed Council members.

### A.

Three considerations point to the conclusion that the terms "officer" and "employee" in the Order have the same meaning as those terms in 5 U.S.C. §§ 2104 and 2105. First, in the absence of any definition of "employee" in the criminal conflict-of-interest statutes applicable to Federal employees in title 18, we have generally assumed that the term "was no doubt intended to contemplate an employer-employee relationship as that term is understood in other areas of the law,"

---

(2) engaged in the performance of a Federal function under authority of law or an Executive act, and

(3) subject to the supervision of an authority named by paragraph (1) of this section, or the Judicial Conference of the United States, while engaged in the performance of the duties of his office

An "employee" under 5 U S.C § 2105 is

[A]n officer and an individual who is —

    (1) appointed in the civil service by one of the following acting in an official capacity—

        (A) the President,

        (B) a Member or Members of Congress, or the Congress,

        (C) a member of a uniformed service,

        (D) an individual who is an employee under this section;

        (E) the head of a Government controlled corporation, or

        (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32,

    (2) engaged in the performance of a Federal function under authority of law or an Executive act, and

    (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

[10] Letter for Joseph E Kasputys, Assistant Secretary for Administration, Department of Commerce, from Joseph B Scott, Acting General Counsel, Civil Service Commission (Aug 3, 1976) ("CSC Opinion")

[11] The Commerce Letter does not specifically address the possibility that appointed Council members might be within title 5's definition of an "officer." However, § 2105's definition of an "employee" explicitly extends to "officers." In contending that appointed Council members are not "employees," therefore, the Commerce Letter impliedly excludes their being "officers."

and in particular have turned to 5 U.S.C. § 2105 as providing "the most obvious source of a definition" for title 18 purposes. *See Conflict of Interest — Status of an Informal Presidential Advisor as a "Special Government Employee,"* 1 Op. O.L.C. 20, 20 (1977).[12] Because the objectives of the Order and its implementing regulations are closely related to those of the conflicts statutes, we think it reasonable to look to title 5's definition of "employee" when elucidating the Order. *Cf. Northcross v. Board of Educ.*, 412 U.S. 427, 428 (1973) (similarity of language and purpose in different statutes suggests that they be construed similarly).[13]

Second, although the Order does not expressly adopt title 5's definition of an "employee," it does adopt that title's definition of an "agency." *See* Order § 503(c) ("'Agency' means any executive agency as defined in 5 U.S.C. 105 . . . ."). We think it unlikely that the Order was intended to cover personnel who were employed by "agencies" within the meaning of title 5 but who were not themselves "employees" within the same title.

Third, although the Order's preamble locates the President's authority to issue the Order in "the Constitution and laws of the United States" without specifying any particular statutory provision, we agree with the Commerce Letter that the most obvious statutory source of authority for the Order is 5 U.S.C. § 7301. That section states that the President "may prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301, and is a general statutory source of authority for Presidential regulation of executive branch personnel. *See Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273 n.5 (1974); *Crandon v. United States*, 494 U.S. 152, 183 (1990) (Scalia, J., concurring in the judgment) (Executive Order No. 11222 was issued "under the President's authority and pursuant to 5 U.S.C. § 7301"). Because the section occurs in title 5, its interpretation is governed by the definition of an "employee" in § 2105 of the same title.[14] To the extent that the Order rests upon § 7301, therefore, its coverage must be limited to the class of employees within § 2105.

---

[12] *See also* Memorandum for Irving P. Margulies, Deputy General Counsel, Department of Commerce, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: President's Private Sector Survey on Cost Control* at 10 (Dec 15, 1982) ("the Title 5 definition of employee is frequently used as a starting point for any analysis of whether the conflict of interest laws apply to a particular individual . . . although the Title [5] definition is not necessarily conclusive for conflicts purposes").

[13] The Order expressly covers both regular and special Government employees of an agency *See* Order § 503(b) An individual's status as a special (as distinct from regular) Government employee turns on whether the appointment is for no more than 130 days out of any consecutive 365 days. *See Restrictions on a Federal Appointee's Continued Employment by a Private Law Firm*, 7 Op O L.C. 123, 126 (1983). We have applied the elements of title 5's definition of "employee" to both regular and special Government employees. *See* 1 Op. O L C at 21, *Federal Advisory Committee Act (5 U.S C. App. 1) — United States-Japan Consultative Group on Economic Relations*, 3 Op O.L C 321, 322-23 (1979).

[14] Section 2105 specifies that its definition applies generally in title 5, "except as otherwise provided by this section or when specifically modified." Section 7301 does not undertake to modify § 2105's definition of an "employee," and thus does not fall within this exception

## B.

Assuming then that the Order applies only to "employees" within the meaning of § 2105, an appointed Council member would have to meet each of the three tests in § 2105 to be deemed a covered "employee." He or she would have to be (1) "appointed" by an appropriate official, (2) engaged in the performance of a Federal function, and (3) subject to the supervision of an appropriate Federal officer or employee. *See Horner v. Acosta,* 803 F.2d 687, 691-92 (Fed. Cir. 1986) (collecting cases); *Costner v. United States,* 665 F.2d 1016, 1019-20 (Ct. Cl. 1981).

It is not disputed that appointed Council members satisfy the first two of these tests. The Commerce Letter contends, however, that the third test is not met. In its view, because these Council members are not subject to the supervision of the Secretary, they are not "employees" within § 2105 or the Order. We agree that the third test is not met.

We begin by considering the text of the Magnuson Act. As we have observed, "[t]he FCMA 'adopts a somewhat convoluted scheme to achieve its purposes of conservation and management of fishery resources.'" *Litigating Authority of the Regional Fishery Management Councils,* 4B Op. O.L.C. 778, 778 (1980) (quoting *Washington Trollers Ass'n v. Kreps,* 466 F. Supp. 309, 311 (W.D. Wash. 1979), *rev'd on other grounds,* 645 F.2d 684 (9th Cir. 1981)) ("Litigating Authority").[15] Two features of the Act in particular demonstrate that Congress did not intend appointed Council members to be "subject to the supervision of" the Secretary within the meaning of § 2105. First, the Secretary's removal power as to an appointed Council member cannot be exercised except upon the prior recommendation of two-thirds of a Council. *See* 16 U.S.C. § 1852(b)(5). This provision severely limits the Secretary's removal power and is designed to constrain narrowly the Secretary's ability to supervise and control the Council members he appoints. *See Morrison v. Olson,* 487 U.S. 654, 694, 696 (1988) (power to remove officials provides ability to supervise and control them); *Meyer v. Bush,* 981 F.2d 1288, 1295 (D.C. Cir. 1993) (same).[16]

---

[15] In enacting the Magnuson Act, Congress "creat[ed] really a unique animal in these management councils, something that had not existed before      We tr[ied] to create something unique, and we did in the regional management councils  We did not make them regular Federal employees, because we did not want them to be regular Federal employees." *See Fishery Conservation and Management Act· Hearings Before the Subcomm on Fisheries and Wildlife Conservation and the Environment of the House Comm on Merchant Marine and Fisheries,* 96th Cong  448-49 (1979) ("1979 Hearings") (remarks of Rep  Studds)

[16] Consistent with that intent, the House Report on the 1983 amendments to the Magnuson Act stated that the Councils "enjoy some degree of independence from the Secretary '  *See* H R  Rep  No 97-549, at 15 (1982), *reprinted in* 1982 U S.C C A N  4320, 4328 ("1982 House Report") (accompanying H R  5002 enacted as Pub L  No  97-453, 96 Stat  2481 (1983))  Representative Studds went further in emphasizing the Councils' autonomy:

> I would have been outraged looking at that statement  "The councils enjoy some degree of independence from the Secretary "  That was backwards, absolutely inside-out and backward  In some limited ways, the councils have some responsibilities which involve the Secretary  They are

Second, any fishery management plan drafted by the Secretary may not limit access to a fishery unless a majority of the voting membership of each affected Council approves. *See* 16 U.S.C. § 1854(c)(3). Thus, the statute empowers the Councils to prevent certain regulatory actions by the Secretary and, in effect, puts the Councils on a footing with the Secretary in regulating access to regional fisheries. In view of both the powerful constraints on the Secretary's removal authority and the Councils' apparent "veto" power over some of the Secretary's initiatives, it cannot be said that the Council members are subject to the Secretary's supervision.

Legislative history (albeit history relating to amendments to the original Magnuson Act) supports this reading of the statute. The House Report on the 1983 amendments to the Magnuson Act stated that "Council members and administrative staffs are not Federal employees in the sense of 5 USC 2105 because they are not appointed by, or subject to the supervision of Federal officials in their day-to-day activities." 1982 House Report at 15.[17] Moreover, the Commerce Department itself denies (and has long denied) that the Secretary of Commerce exercises supervisory authority over the Councils. The Commerce Department's position is buttressed by the 1976 CSC Opinion. *See* Commerce Letter at 6.

Consequently, we conclude that appointed Council members are not "employees" subject to the Order. In addition, the executive directors and administrative employees of the Councils also are not "employees" because they are appointed and supervised by the Councils, *see* 16 U.S.C. § 1852(f)(1), a majority of whose members are not federal employees, so that the requirements of 5 U.S.C. § 2105 again are not met. *Accord* 1982 House Report at 15.[18]

In reaching these conclusions, we do not suggest that the existence of statutory limitations on removal is generally inconsistent with the retention of supervisory power in the person who can exercise the power to remove. On the contrary, the case law clearly supports the view that "for cause" limitations on removal power can be compatible with the continuing power and duty to supervise.[19] In the case of the Councils, however, the statute does not restrict the Secretary's removal

---

fundamentally independent from the Secretary They do not enjoy some degree of independence from the Secretary, they are basically, fundamentally and critically independent of the Secretary. 1979 Hearings at 449-50

[17] We note that the House Report is in error insofar as it states broadly that Council members are not appointed by Federal officials. The Secretary appoints the Council members whose status is in question here

[18] However, Federal employees detailed to the Councils pursuant to 16 U.S C § 1852(f)(2) would retain their status as "employees" within the meaning of 5 U S C § 2105.

[19] *See, e.g., Morrison v. Olson,* 487 U S at 692 ("good cause" limitation on the Attorney General's power to remove independent counsel did not prevent Attorney General from exercising sufficient supervisory authority to assure that counsel performed competently and in accordance with statutory mandate), *Bowsher v Synar,* 478 U.S 714, 726, 728-29 (1986) (Congress's power to remove the Comptroller General for causes including "inefficiency," "neglect of duty," and "malfeasance" enabled it to control execution of laws by Comptroller General). Indeed, the very ability to remove for "cause" presupposes that the officer or body that has the removal power must supervise the subordinate officer at least to the extent needed to determine whether "cause" for removal exists

power merely by requiring that "cause" for removal exist. It also demands that, before a Council member can be removed, two-thirds of the Council's voting membership recommend such removal. In effect, the statutory scheme not only circumscribes the removal power, but also vests that power *jointly* in the Secretary and the Councils themselves. This unusual feature of the Magnuson Act distinguishes it from more traditional legislation in which some form of "cause" is all that is required before removal can occur. As a result, the Councils possess greater autonomy than that enjoyed, for example, by typical "independent" agencies.[20]

We also do not suggest that the Secretary utterly lacks any supervisory authority with regard to the Councils. On the contrary, it is clear that under this unusual statutory scheme, Congress intended the Secretary to exert substantial control over basic aspects of the Councils' activities. Thus, as we have pointed out:

> However independent the Councils may be in their day-to-day operations, ultimate authority over a majority of their membership, budgets, and their major area of concern — the fishery management plans — remains with the Secretary or other federal agencies. The Councils perform the basic research, hold hearings, draft the plan for their area, and propose regulations. It is the Secretary, however, to whom the drafts and proposals are submitted and it is the Secretary who either approves the management plan or amends it to his satisfaction. It is also the Secretary who reviews the regulations to insure their legality and who implements them.

*Litigating Authority*, 4B Op. O.L.C. at 782 (footnotes and citations omitted).[21]

In our judgment, however, the Secretary's powers with respect to the Councils do not suffice to render appointed Council members "employees" subject to the Secretary's supervision. As Senator Magnuson put it, "the Councils are self-determinant in their own affairs." Magnuson, *supra* at 436. The unusually severe constraints on the Secretary's removal power, coupled with the Councils' ability to "veto" the Secretary's draft fishery management plan if the plan limits access to a fishery, are incompatible with the ordinary meaning of supervision. Consequently,

---

[20] *Compare* 16 U S C § 1852(b)(5) (prior recommendation of two-thirds of Council needed before Secretary may remove member for "cause") *with. e g*, 15 U S C. § 41 (President may remove member of Federal Trade Commission for "inefficiency, neglect of duty, or malfeasance in office") We have found only one other statute, 16 U S C § 4009, establishing certain seafood marketing councils, that limits the removal power in a fashion comparable to 16 U S.C § 1852(b)(5).

[21] *See also* Christopher L. Koch, Comment, *Judicial Review of Fishery Management Regulations Under the Fishery Conservation and Management Act of 1976*, 52 Wash L. Rev. 599, 616, 620 (1977) (Secretary is final arbiter in promulgation of fishery management measures and is responsible for ensuring that management schemes comport with legislative standards, fact that Secretary must review Councils' decisions permits scrutiny of management plans for self-serving measures that Councils dominated by fishing industry might put forward).

we conclude that appointed Council members are not employees covered by the Order.

## *Conclusion*

As a matter of statutory construction, and on the basis of the specific features of the Magnuson Act, we conclude that Executive Order No. 12674, as amended by Executive Order No. 12731, and the implementing regulations relating to that Order, do not apply to appointed members, executive directors, or administrative employees of the Regional Fishery Management Councils.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*