WASHINGTON TROLLERS ASSOCIATION et al., Plaintiffs-Appellants,

v.

Juanita KREPS, Secretary of Commerce, Defendant-Appellee.

No. 79-4240.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided May 18, 1981.

Scott E. Stafne, Stafne & Hemphill, Seattle, Wash., for plaintiffs-appellants.

Anne S. Almy, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before PREGERSON and POOLE, Circuit Judges, and KARLTON,[*] District Judge.

PREGERSON, Circuit Judge:

Appellants—several associations representing commercial troll fishermen, and named individual troll fishermen—appeal from a summary judgment against them in this suit challenging the 1978 Fishery Management Plan for commercial and recreational salmon fisheries off the coasts of Washington, Oregon, and California ("the Plan"). Appellants seek a declaration that the Plan does not conform to the provisions of the Fishery Conservation and Management Act of 1976, 16 U.S.C. §§ 1801–82 ["the FCMA"], and the guidelines established pursuant to that act, 50 C.F.R. 602.2, 602.3, and hence could not serve as a proper basis for fishery management regulations promulgated by the appellee Secretary of Commerce. Because we find that material issues of fact remain unresolved, we reverse the district court's grant of summary judgment.

Section 303(a)(3) of the FCMA, 16 U.S.C. § 1853(a)(3), which provides that fishery management plans are to specify the fishery's present and likely future condition, maximum sustainable yield, and optimum yield, requires that plans "include a summary of the information utilized in making such specification." Appellants contend that the Plan violates this requirement because it relies on computerized analysis systems without describing either the computer methodology or the data used to arrive at the Plan's projections and recommenda-

---

[*] Honorable Lawrence K. Karlton, United States District Judge for the Eastern District of California, sitting by designation.

tions. Appellees reply that the Plan cites documents that describe the computer methodology in sufficient detail to serve as the basis for informed criticism and that as long as such documents were publicly available, it was unnecessary to include them in the Plan itself.

The kind of "summary" section 303(a)(3) requires can be understood only in light of the purposes and policies of the FCMA. Congress clearly intended to give those members of the public interested in or affected by fishery management plans and regulations a meaningful voice in shaping those plans and regulations. Section 2(b)(5)(A) of the FCMA, 16 U.S.C. § 1801(b)(5)(A), states that one purpose of the Act is to "enable the States, the fishing industry, consumer and environmental organizations, and other interested persons to participate in, and advise on, the establishment and administration of such [fishery] plans." And section 2(c)(3) of the FCMA, 16 U.S.C. § 1801(c)(3), enunciates a policy of "assur[ing] that the national fishery conservation and management program . . . involves, and is responsive to the needs of, interested and affected States and citizens." To realize these goals, Congress stipulated that when the Secretary of Commerce approves a fishery management plan and publishes it with proposed implementing regulations, "[i]nterested persons shall be afforded a period of not less than 45 days after such publication within which to sub-

mit in writing data, views, or comments on the plan . . ., and on the proposed regulations." FCMA section 305(a), 16 U.S.C. § 1855(a).

■ This provision for public comment can effectuate Congress's goals only if the public is able to make intelligent, informed, meaningful comments. The "summary of the information utilized" in the Plan's specifications required by section 303(a)(3) must therefore provide information sufficient to enable an interested or affected party to comment intelligently on those specifications.[1] "To suppress meaningful comment by failure to disclose the basic data relied upon is akin to rejecting comment altogether." *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240, 252 (2d Cir. 1977). Accordingly, although the "summary" that the Plan is required to include may incorporate by reference documents containing the necessary information, those documents must be reasonably available to the interested public.[2] "It is not consonant with the purpose of a rule-making proceeding to promulgate rules on the basis of inadequate data, or on data that [to a] critical degree, is known only to the agency." *Portland Cement Association v. Ruckelshaus*, 486 F.2d 375, 393 (D.C.Cir.1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).[3]

■ Here, appellants and appellees disagree sharply as to how readily available the

1. The dissent argues that this interpretation of "summary" strains the common meaning of the term, which it characterizes as " 'a comprehensive and usually brief abstract, recapitulation, or compendium of previously stated facts or statements.' " *Dissent*, at 688. Yet in reality it is the sketchy information contained in the Plan which does violence to the common meaning of "summary." Repeatedly, the Plan explains how data used in its calculations was obtained, but gives no clue as to what that data actually was nor where to find it. For example, the Plan states that its yield computations are based partly on ocean migration patterns derived "primarily [from] an analysis of adult fish tagging experiments in the ocean." Plan at 91, 43 Fed.Reg. 15685. But nothing is said as to what these patterns actually were, where they are to be found, what the experiments were, or where *they* are recorded. Such sketchy information is not an abstract, recapit-

ulation, or compendium of previously stated facts, but rather an allusion to completely unstated facts.

2. The dissent is mistaken in describing this requirement as mandating that "all of the raw data and any other information" used in formulating fishery yield specifications must be made available. The issue is whether the very information *central* to the decision, and which the government in fact relied upon, must in some form be accessible to the interested public.

3. *Cf. Western Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) ("When substantive judgments are committed to the very broad discretion of an administrative agency, procedural safeguards that assure public access to the decisionmaker should be vigorously enforced.")

documents describing the computer methodology actually were. They disagree on whether the Plan sets out the data that was fed into the computer to obtain the Plan's specifications. They even disagree on whether only one computer model was used to obtain all of the descriptions, projections, and analyses in the Plan. All of these are issues of fact, all are highly material, and all are unresolved. Summary judgment, however, is proper *only* when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 n.3 (9th Cir. 1980). Therefore, we must reverse the entry of summary judgment; further proceedings will be necessary to resolve the factual disputes in this lawsuit.

The judgment of the district court is reversed, and the case is remanded for further proceedings.

POOLE, Circuit Judge, dissenting.

Today the majority mandates that henceforth, before promulgating fishing regulations pursuant to the Fishery Conservation and Management Act (Act), 16 U.S.C. § 1801 *et seq.*, the Secretary of Commerce must make available to every interested party, every computer model, methodology, statistical study, all of the raw data and any other information which played a role in formulating fishery yield specifications pursuant to § 1853(a)(3). Thus, the public now has a right of access to all that is used to formulate such specifications and may obtain the information in the form that it came to the Secretary. I cannot agree that the statute or the public's interest in commenting on proposed regulations requires imposition of such a sweeping access requirement. Nor can I agree that summary judgment was improperly granted in this case. I respectfully dissent.

1. *See* 16 U.S.C. § 1855(a).

2. The majority opinion is contradictory when it concludes that a material issue of unresolved fact is "whether the Plan sets out the data that was fed into the computer to obtain the Plan's specifications." Maj. Op., at 687. Earlier on the same page the opinion indicates that detailed information which the Secretary must

### I.

The key statutory provision construed is 16 U.S.C. § 1853(a)(3), which provides that in promulgating a fishery management plan, that plan must:

assess and specify the present and probable future condition of, and the maximum sustainable yield and optimum yield from, the fishery, *including a summary of the information utilized in making such specification.*

(emphasis supplied). Reading this language in conjunction with provisions of the Act requiring public opportunity for comment on fishery management plans and regulations,[1] the majority concludes that the term "summary" must be defined to require complete access to all the information and methodologies used in formulating the specifications of a fishery management plan. As the majority makes clear in the fourth paragraph of its opinion, all of the basic data used must be available if meaningful public comment is to be possible. Moreover, in light of the conclusion that material issues of unresolved fact are whether the raw data fed into the computer was disclosed in the plan,[2] or whether the computer model was available, the majority must necessarily conclude that disclosure of such materials is essential. Absolute access is the necessary import of today's decision.

### A.

It is a familiar principle of statutory construction that the particular words used by Congress provide the best indication of a statute's meaning. *See, e. g., Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). In this case, Congress used the term "summary" and the Act requires a plan to summarize the information used to develop the

disclose may simply be made reasonably available to the public rather than actually appended to the plan. I assume the material issue of fact captured in the majority's understanding is whether the data fed into the computer was "reasonably available," not whether it was actually disclosed in the plan.

plan specifications. 16 U.S.C. § 1853(a)(3). I cannot conceive of any definition of the term "summary" which would require access to the underlying raw data. A summary is "an abridgment; brief; compendium; digest; * * * ";[3] or "a comprehensive and usually brief abstract, recapitulation, or compendium of previously stated facts or statements."[4] Access to all is the antithesis of a summary.

### B.

As a matter of language and common understanding, the majority does not attempt to characterize "complete access" as an accepted—or even plausible—definition of the term "summary."[5] Rather, the justification for the extraordinary access mandated today is said to lie in the public's need for all the Secretary's information so that meaningful comment will be possible. We are told that although this information need not be appended to the plan or regulations themselves, it must be reasonably available to the interested public if intelligent public comment is to be expected, and that access to that body of knowledge, wherever it be located, is an absolute condition to the legality of any plan or regulation.

I have no difficulty agreeing that, when the Secretary is required to disclose highly detailed information, it is adequate if, instead of appending that information to the plan or regulations, the public is provided a means of reasonable access. The flaw in the majority opinion is its conclusion that the word summary is to be given something foreign to its common meaning and that the Act's provisions for public comment are to be enlarged into an onerous responsibility nowhere contemplated by Congress or supported in any authority on administrative procedure. It simply serves no legitimate end to hold that complete access to everything used to formulate plan specifications is the *sine qua non* of intelligent public comment.[6]

### C.

Of course it is true that meaningful public comment flows from information. But the quantum of the information that must be disclosed to bring forth intelligent comment is a fluid consideration. Obviously, the most informed commentator would be one with all of the agency's information, extensive experience with the administrative process, expertise in the field of which the regulation is a part and a participative role in the decisionmaking. Yet no one has suggested that to be helpful or meaningful, comments must be the product of such ideal, laboratory conditions.

There is no limit on an analysis which defines disclosure solely with reference to what is necessary for intelligent public comment. It is always possible for ingenious litigants and resourceful judges to envision additional bits of information which, if publically available, would improve the administrative process by permitting broader public comment. But when as here, Congress has drawn the line of required access, it is not for us to redraw it to increase comment, and especially upon as tenuous a basis as that put together by the majority here.

---

3. Black's Law Dictionary (5th ed. 1979).

4. The Random House College Dictionary (rev. ed. 1980).

5. The legislative history does not offer guidance as to why the term "summary" was included in § 1853(a)(3).

6. Cases such as *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240, 251 (2d Cir. 1977), do not particularly aid analysis in this case. *Nova Scotia* did not deal with a situation, such as in this case, where Congress placed some limits on what the regulating agency was required to make publically available. Moreover, the problem the court faced in *Nova Scotia* was the complete absence of information from the Food and Drug Administration about the scientific basis for regulations significantly burdening the food industry. *Id.* Ours is not a case in which the Secretary has proposed regulatory action, yet failed to apprise the public of the basis for it. The Secretary has never disputed her obligation to make available a meaningful summary of the basis for her plan specifications, including both the scientific data and computer models employed, pursuant to § 1853(a)(3).

The right of public comment under this statutory scheme is a right defined by Congress. It is not, under the Act, a public invitation to reconduct and reformulate the entire regulatory process using all of the materials used by the Secretary. Rather, it is a right to comment based on access to a meaningful summary of the information used in formulating the plan. Thus, Congress provided for the fullest and most thoughtful comment that a comprehensive, brief recapitulation of the Secretary's data and methodologies used in preparing the plan specifications would evoke.

Not only does congressional use of the term "summary" compel this conclusion but other provisions of the Act vindicate such a construction. The Act expects that much of the information necessary to evolve fishery plans will be supplied by those in the fishing industry. *See* 16 U.S.C. § 1853(a)(5). All of this information, which is by the terms of the Act essential to formulation of a plan and regulations [16 U.S.C. § 1853(a)(2)], is *not* to be made publically available:

> Any statistics submitted to the Secretary by any person in compliance with any requirement under subsection (a)(5) of this section shall be confidential and shall not be disclosed except when required under court order. ... except that such statistics [may be disclosed] *in any aggregate or summary form* which does not disclose directly or indirectly the identity or business of any person who submits such statistics.

16 U.S.C. § 1853(d) (emphasis supplied).[7]

Subsection 1853(d) is relevant in two respects. First, it undercuts the majority's

analysis that all raw data must be available to vindicate the public comment provisions contained in the Act. Congress concluded that the public comment provisions could survive, and comments be meaningful, even without all of the raw data used pursuant to § 1853(a)(2).

The language of the subsection also makes clear that Congress used "summary" just as it is commonly defined. The language of the subsection leaves no doubt that "aggregate or summary form" was not to be defined as "raw, unedited data."

### D.

The Act cannot be construed to require anything more than a summary—that is, a brief, compendium or digest of the information used to formulate the plan specifications pursuant to § 1853(a)(3). When Congress has defined the required level of administrative disclosure to the public, the right of public comment can only be understood with reference to the congressionally defined level; it is not for the judiciary to substitute its judgment, however preferable that may temporarily seem, as to what public access is appropriate in the interest of a "more perfect" administrative system.[8]

### II.

The disposition of this case cannot be fairly characterized as a failure of the district court to identify material, unresolved issues of fact. Disputed facts as to appellants' access to all the raw information used in devising the plan specifications become material only if one accepts the majority's theory that a "summary" within the mean-

---

**7.** The Senate Conference Report on the Act makes this point unmistakeably. Commenting on § 303 of the Act, 16 U.S.C. § 1853, it warns:

This section also requires that statistics submitted by the Secretary pursuant to a management plan must not be released to the public in the form of individual records unless pursuant to court order.

S.Conf.Rep.No.94–711, 94th Cong., 2d Sess. 53, *reprinted in*, [1976] U.S.Code Cong. & Ad. News, 593, 660, 676.

**8.** In evaluating the disclosure requirements of the National Environmental Policy Act, 42

U.S.C. § 4321 *et seq.*, an analogous problem, this court recently declined to require that the public be granted access to all the working papers or detailed supporting documents employed in preparing an environmental impact statement even though such materials would provide "additional insight" to members of the public wishing to comment. *Columbia Basin Protection Ass'n v. Schlesinger*, 643 F.2d 585 at 595 (9th Cir. 1981). I believe that this view of public disclosure requirements in *Columbia Basin* is consistent with the views I express here.

ing of the Act requires complete access. That interpretation should be rejected, and the appropriate inquiry should be whether the Secretary made available congressionally mandated summaries of the information used in devising the plan which must be disclosed pursuant to § 1853(a)(3).

### A.

The only issue of availability in this case, once one puts aside the vagrant theory of a need to disclose raw data and unedited models, is whether a summary of the computer model was available. The Secretary concedes that information about the model was not actually disclosed with the plan or regulations but argues it was reasonably available. Appellants contend they were unsuccessful in obtaining a summary of the model and point to efforts they made to obtain the model summary from the Chairman of the Committee that prepared the plan and from a state library. The Secretary does not dispute that a summary of the model is relevant information about the formulation of the plan and must be publically available as part of the "summary" required in § 1853(a)(3).

Although the district court did not expressly indicate whether summary information about the model was available, it was unnecessary to resolve the issue as appellants cannot complain about their inability to obtain the summary; they failed to pursue a reasonable means provided by the Secretary to get additional information.

In the Federal Register notice of the plan and regulations, Mr. Donald Johnson of the Commerce Department in Washington was specified as the person to contact for more information. 43 Fed.Reg. 15630. Appellants did not contact Mr. Johnson. The Act recognizes that publication in the Federal Register is the most appropriate means for the Secretary to convey to the public information relevant to promulgation of either a plan or regulations. *See* 16 U.S.C. § 1855(a). Failure to pursue this reasonable avenue to obtain more information forecloses the opportunity for complaint in this court.[9]

### B.

The remaining issue is whether the summary provided by the Secretary pursuant to § 1853(a)(3) was sufficient for purposes of the statute. The district judge found that the plan contained information about the maximum and optimum yield calculations as required by § 1853(a)(3). 466 F.Supp. at 314. Reviewing the 157 page plan in its entirety, the court concluded that a reasonable effort had been made to disclose substantial amounts of information covering every issue relevant in promulgating the plan and regulations, found that no subject had been ignored, and noted that the appellants had failed to point to any information withheld or which was essential to their right to comment. *Id.* The district court's conclusions are sustained by the record.

The primary purposes served by statutory requirements of public disclosure are those of apprising the public of the action the Secretary plans to take and affording an

---

**9.** Appellant argues that a Federal Register notice specifying Johnson as the source of more information came too late for it to obtain a summary of the computer model for use in commenting to the Pacific Regional Council, the body which prepared the proposed plan. Without tarrying over whether a summary of the model could reasonably be obtained before the notice was published in the Federal Register specifying Johnson as the source of additional information, appellant's argument simply misses the point. A plan may not be effective until approved by the Secretary. 16 U.S.C. § 1854(a). Before they may be made binding, the plan and proposed regulations must be published in the Federal Register so that the public will have 45 days to comment on the plan, any amendments to it or any regulations proposed. *See* 16 U.S.C. § 1855(a)(2). The Secretary is required to consider all comments received. 16 U.S.C. § 1855(c)(1)(A). It was at this stage, when complete comment on the entire range of regulation proposed by the Secretary was possible, that Johnson was designated as the source of additional information. I am not prepared to invalidate regulatory action for want of adequate public disclosure when, at a stage complete comment is possible, parties fail to seek out information they may need to comment from a person specified as the source for additional information.

opportunity for public participation by means of the comment process. This court has said that in reviewing disclosures required by a statute to permit public comment, regulations will not be set aside for inadequate disclosure unless the disclosures were so grossly deficient as to frustrate the public right. *See, e. g., National Wildlife Federation v. Adams*, 629 F.2d 587, 593 (9th Cir. 1980). Nowhere in the record here does it appear that the disclosure of information was so grossly deficient as to erode the public right to comment or to withhold from the public information on regulatory action proposed by the Secretary. I would affirm the judgment.