**STATE OF LOUISIANA and the Louisiana Department of Wildlife and Fisheries**

v.

**Malcolm BALDRIDGE, Secretary of the United States Department of Commerce.**

Civ. A. No. 81–2028.

United States District Court, E. D. Louisiana.

April 13, 1982.

Kendall L. Vick and Eavelyn T. Brooks, New Orleans, La., for plaintiffs, State of La. and The Louisiana Dept. of Wildlife and Fisheries.

Wells D. Burgess, Washington, D. C., for defendant, Malcolm Baldridge, Secretary of the U. S. Dept. of Commerce.

Leslie M. Macrae and R. Lambeth Townsend, Austin, Tex., for intervenor, State of Tex.

## OPINION

ROBERT F. COLLINS, District Judge.

This case was tried to the Court, sitting without a jury, on June 10, 1981. After careful consideration of the evidence introduced during the trial, the arguments of counsel, the submitted memoranda and materials, the relevant facts, and the applicable law, the Court hereby renders its Opinion.

### Introduction

The Fishery Conservation and Management Act (hereinafter the Act), 16 U.S.C. § 1801 *et seq.*, declares that "[a] national program for the development of fisheries which are underutilized or not utilized by the United States fishing industry ... is necessary to assure that our citizens benefit from the employment, food supply, and revenue which could be generated thereby." 16 U.S.C. § 1801(a)(7). To this end, the Act authorizes the United States to assume management authority over fishery resources within a fishery conservation zone (hereinafter the FCZ), extending from the seaward boundary of the territorial sea to a point 200 miles from shore. 16 U.S.C. § 1811. The state continues to regulate fishing, except under circumstances not present in this case, out to the seaward limit of the state's territorial waters. 16 U.S.C. § 1856. The Act establishes Regional Fishery Management Councils composed of state and federal appointees to prepare, monitor and revise fishery management plans with the participation of the fishing industry and other interested groups. 16 U.S.C. §§ 1801(b)(4), 1801(b)(5), 1851, 1852. Plans and amendments to plans are submitted to the Secretary of the United States Department of Commerce (hereinafter the Secretary) for review and approval and, if approved, the plan becomes implemented through regulations promulgated by the Secretary. 16 U.S.C. §§ 1854, 1855.

Responsibility for developing fishery management plans for the Gulf of Mexico fisheries is vested in the Gulf of Mexico Fishery Management Council (hereinafter the Gulf Council), which consists of mem-

bers from the States of Texas, Louisiana, Mississippi, Alabama, and Florida. One of the first fisheries addressed by the Gulf Council was the shrimp fishery. Shrimp is the most valuable of all domestic fisheries, averaging 23 percent of the value of all fish landed in the United States for the period 1964 through 1977, and commercial shrimp fishing in the Gulf of Mexico accounted for over 80 percent of the dockside value of the United States shrimp landings. 45 Fed. Reg. 74218. There are essentially three types of shrimp processors: 1) "green" (fresh) or frozen shrimp; 2) "breaders"; and 3) canners. 45 Fed.Reg. 74194. Canners are located primarily in South Louisiana and Mississippi, with the largest concentration found in the New Orleans area. Canners generally use small to medium shrimp. Processors of green, frozen, and breaded shrimp, many of whom are located in Texas, tend to use larger shrimp for their product. *Id.*

Having identified the problems associated with the shrimp fishery, the Gulf Council drafted a comprehensive management plan, including Management Measure No. 2, which is the subject of this lawsuit. Management Measure No. 2 establishes "a cooperative closure of the territorial sea of Texas and the adjacent U. S. FCZ ...." 45 Fed.Reg. 74192. The Act specifically authorizes Regional Fishery Management Councils to designate zones where, and periods when, fishing shall not be permitted. 16 U.S.C. § 1853(b)(2). The purpose of Management Measure No. 2 is to protect shrimp until they reach a more valuable size and thereby eliminate the wasteful practice of discarding undersized brown shrimp. 45 Fed.Reg. 74297. A seasonal closure of the entire FCZ in the Gulf was not considered because of the potentially adverse impact on the Louisiana canning industry which relies upon a year round supply of smaller shrimp. 45 Fed.Reg. 74179.

Management Measure No. 2 was adopted after three years of planning evolution. The measure was developed by the Gulf Council's Shrimp Management Committee, which then adopted the measure after analysis of its expected effects by Louisiana State University, the contractor for the Plan. A draft of the plan containing Management Measure No. 2 and a draft environmental impact statement were released to the public in October, 1979. Public hearings were held at various sites throughout the Gulf States. Based upon public comments, a final draft of the plan was prepared and approved by the Gulf Council in January, 1980 and transmitted to the Secretary for his approval. In response to minority reports by council members who were concerned that Management Measure No. 2 would not be effective unless the State of Texas eliminated its size restrictions, the so-called count restriction, and who were also concerned about the possible adverse impact of Management Measure No. 2 on Louisiana shrimp fishermen, the Gulf Council designated Management Measure No. 2 as a trial measure. It was also recommended that the State of Texas rescind its count restriction law.

After a thorough review of the matter, including consideration of minority reports, the Secretary approved the plan, including Management Measure No. 2, on May 28, 1980. The plan was published together with proposed regulations to implement the plan on November 7, 1980, and public comment on the plan and proposed regulations were invited. 45 Fed.Reg. 74178. The State of Louisiana and the Louisiana Department of Wildlife and Fisheries submitted comments on the proposed regulations, contending that Management Measure No. 2 is based on inadequate scientific and economic data, fails to take into account recent trends and market variations, and is not consistent with the mandates set forth in the Act. The Secretary considered the comments and promulgated his response. 46 Fed.Reg. 27491–92. Management Measure No. 2 was implemented by regulation on May 20, 1981. 46 Fed.Reg. 27496–97 (50 C.F.R. 658.24). The 30-day period of delayed effectiveness was suspended so that the closure of the FCZ off the State of Texas would begin concurrently with the closure of Texas state waters on May 22, 1981. 46 Fed.Reg. 27493. The full

effectiveness of Management Measure No. 2 was finally realized on May 25, 1981, when the State of Texas rescinded its count restriction law.

On May 18, 1981, the State of Louisiana and the Louisiana Department of Wildlife and Fisheries brought this action for declaratory judgment and for preliminary and permanent injunction of the implementation of Management Measure No. 2. In essence, the plaintiffs complain that Management Measure No. 2 does not comport with the national standards set forth in the Act and was implemented in violation of the plaintiffs' rights to procedural due process. The Court denied plaintiffs' motion for a temporary restraining order and for preliminary injunction. The Court then ordered that the case be heard on its merits under an expedited schedule. Trial on the merits was held on June 10, 1981, and the matter was taken under advisement.

## Discussion

### Scope of Review

■ Congress has specifically provided that regulations promulgated by the Secretary under the Act may only be set aside by a court of the appropriate jurisdiction if the said regulations are found to be:

A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; B) contrary to constitutional right, power, privilege, or immunity; C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; or D) without observance of procedure required by law.

16 U.S.C. § 1855(d) (citing 5 U.S.C. §§ 706(2)(A), (B), (C), and (D)). Only the regulations implementing the shrimp plan, and not the plan itself, are subject to judicial review. Nevertheless, the Secretary is obligated to determine that the plan conforms with the national standards set forth in the Act before regulations implementing the plan are promulgated, 16 U.S.C. §§ 1854, 1855, and hence, in reviewing the regulations, the Court must consider the plan to determine whether the Secretary has abused his discretion in issuing regula-

tions implementing the plan. *Washington Trollers Association v. Kreps*, 466 F.Supp. 309, 312 (W.D.Wash.1979) *rev'd on other grounds*, 645 F.2d 684 (9th Cir. 1981). "The Secretary's finding that the plan complies with the statute is binding on the Court unless it is arbitrary, capricious or an abuse of discretion." *Id.* In short, the Secretary has broad discretion in promulgating regulations to implement the shrimp plan and the Court may only consider "whether this discretion was exercised rationally and consistently with the standards set by Congress ...." *State of Maine v. Kreps*, 563 F.2d 1052, 1055 (1st Cir. 1977); *see also Pacific Coast Federation of Fishermen's Association v. Secretary of Commerce*, 494 F.Supp. 626 (N.D.Cal.1980).

### Standing to Sue

■ The Secretary has urged before this Court that the State of Louisiana and the Louisiana Department of Wildlife and Fisheries lack standing to bring this lawsuit. Relying upon *Oklahoma v. Atchison, Topeka & Santa Fe R. Co.*, 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911), the Secretary contends that the state has no standing to maintain suit for injuries sustained by its citizens. The Secretary, however, ignores the state's historical role in managing its coastal waters. As stated by Judge Gignoux in *State of Maine v. M/V Tamano*, 357 F.Supp. 1097, 1100 (D.Me.1973):

It is clear that Maine has an independent interest in the quality and condition of her coastal waters. It has long been established by decisions of the Supreme Court, and of the Supreme Judicial Court of Maine, that a State has sovereign interests in its coastal waters and marine life, as well as in its other natural resources, which interests are separate and distinct from the interests of its individual citizens. In *McCready v. Virginia*, 94 U.S. 391, 24 L.Ed. 248 (1876), the Supreme Court stated:

The principle has long been settled in this court, that each State owns the beds of all tide-waters within its jurisdiction, unless they have been granted away. In like manner, the States own the tide-

waters themselves, and the fish in them, so far as they are capable of ownership while running. For this purpose the State represents its people, and the ownership is that of the people in their united sovereignty. *Id.* at 394 (citations omitted).

*See also Geer v. Connecticut,* 161 U.S. 519, 529, 534, 16 S.Ct. 600, 40 L.Ed. 793 (1896). More recently, in *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), Mr. Justice Frankfurter, joined by Mr. Justice Jackson, concurring, reaffirmed the continued vitality of *McCready* and described the foundation of the State's power to protect its natural resources as follows:

A State may care for its own in utilizing the bounties of nature within her borders because it has technical ownership of such bounties or, when ownership is in no one, because the State may for the common good exercise all the authority that technical ownership ordinarily confers. *Id.* at 408, 68 S.Ct. at 1168 (footnotes omitted).

Indeed, the Act recognizes the coastal states' concern in the management of fishery resources and specifically provides for state participation in the development of fishery management plans. In an unpublished decision, Judge Gignoux ruled that the State of Maine had standing to challenge regulations promulgated pursuant to the Act, as *parens patriae, State of Maine v. Kreps,* No. 77–45 (D.Me. S.D., July 18, 1977), and the decision on standing was not disturbed on appeal. *State of Maine v. Kreps,* 563 F.2d 1043 (1st Cir. 1977). In view of these authorities, and in light of the state's proprietary interest in its coastal resources, the Court finds that the State of Louisiana has standing to challenge the regulations which are the subject of this lawsuit. Similarly, the state agency in charge of state coastal fishing resources also has standing to sue in this case.

*Rational Basis for the Secretary's Decision*

■ The plaintiffs contend that the Secretary's decision to issue regulations implementing Management Measure No. 2 is without a rational basis and is inconsistent with the national standards of the Act. The lynchpin of this aspect of plaintiffs' complaint is based upon the allegation that the Secretary failed to consider the best scientific data available before approving Management Measure No. 2. The evidence adduced at trial and the administrative record before the Court plainly demonstrate that the plaintiffs' allegation is completely unfounded. From the outset, scientific information was collected in connection with the shrimp plan. Louisiana State University was contracted to develop the plan and to study its effects. The administrative record includes hundreds of pages of scientific studies compiled between January, 1980 and April, 1981. The announcement of the shrimp plan filled over one hundred pages in the Federal Register, replete with scientific and technical data concerning the plan. Public hearings, written submissions, and a minority report became part of the administrative record and were considered by the Secretary.

At the trial on the merits, the plaintiffs relied exclusively upon the testimony of Ken Roberts, an associate specialist in marine resource economics, and Bill Perret, a member of the Gulf Council and the Scientific and Statistics Committee, in support of their contention that the Secretary failed to consider certain scientific and economic factors. Mr. Roberts' criticism of Management Measure No. 2 was submitted to the Gulf Council in the form of a letter dated February 21, 1980 and became part of the administrative record. (Vol. III–B–9). Mr. Perret aired his views in the form of a minority report which also became part of the administrative record. (Vol. I–6). The State of Louisiana and the Louisiana Department of Wildlife and Fisheries submitted comments to the Gulf Council opposing Management Measure No. 2 based essentially on the same grounds as alleged in this lawsuit. Therefore, it is plainly evident that the Secretary had before him the scientific and economic information which plaintiffs allege he did not consider. Moreover, it is clear that the Secretary considered the so-called new scientific data and the criticism

of Management Measure No. 2, but rejected the same because in his judgment, the benefits of Management Measure No. 2 outweigh the potential adverse effects. 46 Fed.Reg. 27491–92.

The Court finds that the Secretary's decision to go forward with Management Measure No. 2 was neither arbitrary nor capricious. The rationality of Management Measure No. 2 is grounded upon the Secretary's efforts to accommodate the interests of the shrimping industries in both Texas and Louisiana while improving the optimum yield and reducing waste of the shrimp population in the Gulf. The decision to adopt Management Measure No. 2 is supported by the administrative record and by the best available scientific evidence. The Court is convinced by the testimony of Terry Leary, staff biologist of the Gulf Council, that the Gulf Council will continue to monitor the effects of Management Measure No. 2 and that the Council will revise the plan to take into account the latest economic and other technical information. In view of these findings, the Court must reject the claim by plaintiffs that Management Measure No. 2 is inconsistent with the national standards of the Act. *See generally Pacific Coast Federation of Fishermen's Association v. Secretary of Commerce, supra* at 629–31.

*Procedural Due Process*

■ The only remaining claims by the plaintiffs rest upon alleged procedural defects in the implementation of Management Measure No. 2. Plaintiffs contend that Management Measure No. 2 was not reviewed by the Scientific and Statistical Committee in contravention of the Guidelines for Development of Fishery Management Plans, 50 C.F.R. § 602.5, and that the 30-day delay-in-effectiveness for regulations implementing Management Measure No. 2 was waived without good cause, in violation of the Administrative Procedure Act, 5 U.S.C. § 555(d).

Plaintiffs allege that the Guidelines for Development of Fishery Management Plans, 50 C.F.R. § 602 *et seq.*, were violated because the Scientific and Statistical Committee failed to review Management Measure No. 2. The guidelines, however, do not specifically authorize the Scientific and Statistical Committee to formally review every aspect of a fishery plan. Rather, the guidelines provide in relevant part:

(3) *Select preferred management options; complete final plan.* (i) Consideration of the management options shall be made by the Council and its advisory groups. The Council shall select the preferred management options that are to be the basis of the final plan and shall prepare a final plan for submission to the Secretary.

50 C.F.R. § 602.5(3)(i).

Advisory groups, such as the Scientific and Statistical Committee, need only consider the management options and then the Council selects the preferred management option. These guidelines were intended as a general framework for the development of fishery management plans. *See* 50 C.F.R. § 602.1. To this end, the guidelines are set forth in broad language, without regard to the minute details of any particular plan. It is clear that these guidelines merely outline the major steps in the evolution of a fishery management plan and that they should be flexibly construed to accommodate individual circumstances. In the present case, the Scientific and Statistical Committee had sufficient opportunity to consider and review Management Measure No. 2 when the entire plan was submitted to the Committee prior to Council approval. (Administrative Record Vol. III–A–95A). Therefore, the Court finds no violation of the regulatory guidelines.[1]

---

1. Moreover, alleged violations of the plan and the manner in which it evolved is not strictly before the Court. Only the regulations which implement the plan may be reviewed under the Act. The plan is relevant only to the extent that it affects the Secretary's decision to promulgate the regulations. Therefore, devia-tion from the guidelines is not actionable absent affirmative proof that the deviation makes the Secretary's approval arbitrary and capricious. *Washington Trollers Association v. Kreps, supra* at 314 n.4. Since the Court has already determined that the Secretary's implementation of Management Measure No. 2 is

■ The other alleged procedural defect concerns the Secretary's suspension of the 30-day delay period in the effectiveness of regulations implementing Management Measure No. 2. 5 U.S.C. § 553(d). However, the 30-day delay may be reduced as otherwise provided by an agency for good cause found and published with the rule. 5 U.S.C. § 553(d)(3). In the instant matter, the 30-day period of delay was suspended so that the closure of the FCZ off the State of Texas would begin concurrently with the closure of state waters. Since concurrent closure of the FCZ and state waters was the sole objective of Management Measure No. 2, the Court finds that the suspension of the delay in the effectiveness of the regulations was for good cause found, and notice of the suspension was published with the rule. Hence, the Secretary did not, in this case, violate any procedural rule in suspending the 30-day delay in the effectiveness of the regulations implementing Management Measure No. 2.

*Conclusion*

The Court finds that there is a rational basis, supported by the administrative record, for the Secretary to promulgate regulations implementing Management Measure No. 2. The plaintiffs have failed to establish any procedural defect, which would warrant the Court to declare the said regulations null and void. WHEREFORE, the Court will enter judgment in favor of the defendant, Malcolm Baldridge, Secretary of the United States Department of Commerce, and against plaintiffs, State of Louisiana and the Louisiana Department of Wildlife and Fisheries.

JUDGMENT

This matter was tried before the Court, sitting without a jury, on June 10, 1981. Pursuant to the Opinion of this Court, dated April 13, 1982, and in accordance with the provisions of Fed.R.Civ.P. 58:

adequately supported by scientific data in the administrative record, the alleged failure of the Scientific and Statistical Committee to review

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment shall be entered in favor of the defendant, Malcolm Baldridge, Secretary of the United States Department of Commerce, and against the plaintiffs, State of Louisiana and The Louisiana Department of Wildlife and Fisheries, dismissing this cause of action.

Plaintiffs shall bear the costs of this suit.

this measure would not constitute a substantial defect in the administrative process.