**Jeffrey TUTEIN et al., Plaintiffs,**

v.

**William M. DALEY, United States Secretary of Commerce, Defendant.**

**No. CIV.A. 98–11034–MBB.**

United States District Court, D. Massachusetts.

April 12, 1999.

---

David E. Frulla, Brand, Lowell & Ryan, P.C., Washington, DC, H. Reed Witherby, Smith and Duggan LLP, Boston, MA, for Jeffrey Tutein, Dorwin Allen, Raymond Kane, Ronald Marsh, Eric Hesse, Plaintiffs.

Mark A. Brown, U.S. Department of Justice, Wildlife & Marine Resources, Benjamin Franklin Station, Washington, DC, Bruce E. Falby, Hill & Barlow, Boston, Stephen E. Roady, EarthJustice Legal Defense Fund, Washington, DC, for William M. Daley, United States Secretary of Commerce, Defendants.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS (DOCKET ENTRY # 9)

BOWLER, United States Magistrate Judge.

Plaintiffs, five New England commercial fishermen of Atlantic Bluefin Tuna ("ABT"), seek declaratory and injunctive relief against defendant William M. Daley, Secretary of the Department of Commerce ("the Secretary"). On March 17, 1999, this court allowed the Secretary's motion to dismiss Count I and deferred a ruling on the motion to dismiss counts II and III pending further briefing. Both parties filed supplemental briefs addressing the additional actions taken by the Secretary since the filing of the motion to dismiss. (Docket Entry 40 & 43).

### BACKGROUND

The Secretary moves to dismiss counts II and III on the basis of ripeness. The March 17, 1999 Order fully describes the allegations of these counts, the administrative history of the Secretary's declaration of ABT as "overfished" in a September 1997 report to Congress and the relevant statutory framework of the Atlantic Tunas Convention Act, 16 U.S.C. §§ 971–971i, and the Magnuson Fishery Conservation and Management Act, as amended by the Sustainable Fisheries Act of 1996, 16 U.S.C. §§ 1801 et seq. ("the Magnuson–Stevens Act"). Accordingly, it is unnecessary to reiterate these matters.

As noted in the March 17, 1999 Order, the record remained unclear as to what events took place after the October 1998 issuance of a draft fishery management plan ("FMP") covering highly migratory species ("HMS"). The October 1998 draft FMP did not identify a preferred rebuilding plan for ABT due to the pendency of new information on stock status and an upcoming November 1998 meeting of the International Commission for the Conservation of Atlantic Tunas ("ICCAT").

ICCAT met in November 1998 and, for the first time, issued a mandatory rebuilding plan for ABT. Declaring ABT "overexploited," ICCAT established a 20 year rebuilding plan with an annual total allowable catch ("TAC") of 2,500 metric tons. The allotment afforded the United States was 1,387 metric tons, an increase of 43 metric tons over the present allotment.

On January 20, 1999, the National Marine Fisheries Service ("NMFS") and the National Oceanic and Atmospheric Administration ("NOAA") published proposed regulations to implement the draft FMP for HMS. With respect to ABT, however, NMFS stated that it would prepare a separate addendum to address the preferred alternative for ABT rebuilding in light of the November 1998 ICCAT meeting.

On February 25, 1999, NMFS and NOAA issued a notice of the availability of the ABT addendum to the draft FMP for HMS ("the draft addendum") and proposed supplemental regulations to implement the draft addendum. The February 1999 draft addendum describes the method whereby NMFS and NOAA determined that ABT stock was overfished utilizing the stock biomass level and the natural mortality rate. The proposed regulations set quotas for various categories of ABT consistent with the 1,387 metric ton ICCAT allotment to the United States. On March 4, 1999, NMFS and NOAA extended the comment period for the proposed regulations to March 12, 1999. To date, the Secretary, acting through NMFS and NOAA, has not issued the final addendum or the final implementing regulations for ABT.

### DISCUSSION

■ As previously stated, ripeness requires consideration of "the fitness of the issue for immediate review and the hardship to the litigant should review be postponed." *Riva v. Commonwealth of Massachusetts*, 61 F.3d 1003, 1009 (1st Cir. 1995). Ordinarily, both prongs, fitness and hardship, "must be satisfied." *Ernst & Young v. Depositors Economic Protection Corporation*, 45 F.3d 530, 535 (1st

Cir.1995) (further acknowledging "the possibility" of "some sort of sliding scale"). Fitness depends, in part, upon whether certain events will definitely occur as anticipated or whether such events may not occur at all. *Riva v. Commonwealth of Massachusetts*, 61 F.3d at 1009. The fitness prong also examines the finality of the agency's action. *Roosevelt Campobello International Park Commission v. United States Environmental Protection Agency*, 684 F.2d 1034, 1040 (1st Cir.1982). Relevant concerns under the hardship prong include whether "'the challenged action creates a "direct and immediate" dilemma for the parties.'" *Riva v. Commonwealth of Massachusetts*, 61 F.3d at 1010 (citation omitted).

"[T]he 'fitness of review' inquiry" examines "whether the issue presented is purely legal, as opposed to factual, and the degree to which any challenged agency action is final." *W.R. Grace & Company v. United States Environmental Protection Agency*, 959 F.2d 360, 364 (1st Cir. 1992); *see also Northcoast Environmental Center v. Glickman*, 136 F.3d 660, 668 (9th Cir.1998) (discussing final agency action). Although plaintiffs correctly point to the legal nature of the issue in Count II, which undoubtedly weighs in favor of a finding of "fitness," the legal nature of the issue does not end the inquiry. *See, e.g., Roosevelt Campobello International Park Commission v. United States Environmental Protection Agency*, 684 F.2d at 1040 (noting legal nature of issue but finding agency action not final and therefore unripe). As stated by the court in *Roosevelt*, "An agency action ... is not 'final' or ripe for review if it makes no change in the status quo itself, but rather requires 'further administrative action other than the possible imposition of sanctions,' before rights, obligations or duties arise." *Roosevelt Campobello International Park Commission v. United States Environmental Protection Agency*, 684 F.2d at 1040.

■ Similar to the 1975 rules permit at issue in *Roosevelt*, the Secretary's listing

of ABT as "overfished" in the September 1997 report to Congress is similar to an interlocutory decision of a lower court. The listing is part of an ongoing administrative process which will ultimately yield final implementing regulations for ABT. Premature review of the Secretary's listing and the allegedly improper criteria used to make the listing deprives NMFS and NOAA of the opportunity to revise, refine or further illuminate the criteria and thereby resolve the underlying controversy. *See generally Roosevelt Campobello International Park Commission v. United States Environmental Protection Agency,* 684 F.2d at 1040. Indeed, the draft addendum further refines and defines the criteria used to determine a fishery's status.

Furthermore, the Secretary's listing did not change the status quo. Rather, the listing is simply part of the administrative process which may or may not culminate in final regulations instituting the dramatic reduction in ABT TAC feared by plaintiffs. The listing as well as the draft addendum and regulations do not adversely affect plaintiffs nor can they be considered final agency action. *See Alaska Factory Trawler Association v. Baldridge,* 831 F.2d 1456, 1464 (9th Cir.1987) (Secretary's approval of FMP "or amendment does not adversely affect anyone nor can it be considered final agency action for which there is no other adequate remedy in court"). Changes in

the status quo occur only with the issuance of final implementing regulations for ABT for which the Magnuson–Stevens Act provides an adequate judicial remedy.[1]

In short, any claim of injury prior to the implementation of the final regulations is speculative. *See e.g., El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 496 (1st Cir. 1992). Likewise, the declaration of ABT as overfished, without more, does not create adverse legal interests. *See Riva v. Commonwealth of Massachusetts,* 61 F.3d at 1010 (discussing absence of adverseness as a salient factor in determining fitness). Adversity of sufficient immediacy to warrant issuance of declaratory relief will occur, if at all, with the issuance of the final implementing regulations for ABT. Inasmuch as these events have yet to take place, Count II fails the fitness branch of the ripeness inquiry.

■ In contrast, the Secretary's compliance with the Regulatory Flexibility Act ("the RFA"), 5 U.S.C. §§ 601–612, with respect to the May 1, 1998 advisory guideline presents a legal issue which is collateral to the Magnuson–Stevens Act's administrative process.[2] No further facts are needed to resolve the controversy. Whereas the Secretary's listing of ABT as overfished depends upon the outcome of additional events, there are no uncertain future or contingent events with respect to the May 1, 1998 guideline's compliance with

---

1. Moreover, this court doubts whether the Secretary's listing is reviewable under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 702 *et seq.,* except in the context of a challenge to the final implementing regulations under 16 U.S.C. § 1855(f). *See Alaska Factory Trawler Association v. Baldridge,* 831 F.2d at 1463 (noting that Secretary's approval of FMP, "standing alone, is not reviewable by the courts"); *State of Louisiana v. Baldridge,* 538 F.Supp. 625, 628 (E.D.La.1982) (noting that "[o]nly the regulations implementing [the FMP], and not the plan itself, are subject to judicial review"). The tightly circumscribed administrative process leading to final implementing regulations after designation of a fishery as "overfished" supports the conclusion that Congress intended to foreclose judicial review of the listing separate and apart

from a challenge to the resulting final regulations.

2. The Secretary's contention that Count III is controlled by the same analysis as Count I is therefore misplaced. An analysis under the RFA does not directly implicate the administrative process leading to the development of final implementing regulations. The statutory scheme of the Magnuson–Stevens Act therefore does not evidence an intention to preclude judicial review of an RFA claim. In addition, the cause of action provided by the RFA is distinct from the general cause of action provided by the APA which expressly precludes judicial review where another statute "impliedly forbids the relief." 5 U.S.C. § 702(2); *see also* 5 U.S.C. § 701.

the RFA. *See generally W.R. Grace & Company v. United States Environmental Protection Agency,* 959 F.2d at 364 (quoting *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir.1990)). Count III therefore more than satisfies the fitness branch of the ripeness inquiry.

Turning to the issue of hardship, this prong depends on the existence of "a 'direct and immediate' dilemma for the parties." *Riva v. Commonwealth of Massachusetts,* 61 F.3d at 1010. "[T]he hallmark of cognizable hardship is usually direct and immediate harm" although "other kinds of injuries occasionally may suffice." *Ernst & Young v. Depositors Economic Protection Corporation,* 45 F.3d at 536. It is also useful to examine whether " 'granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest.' " *Riva v. Commonwealth of Massachusetts,* 61 F.3d at 1010.

As to Count II, plaintiffs submit they will suffer inevitable harm if the Secretary is allowed to proceed with a "super-rebuilding FMP" for ABT. They contend that the resulting FMP process will yield a TAC substantially lower than the current ICCAT recommended TAC. To the contrary, however, the proposed TAC allowance slightly exceeds the present allotment for the United States. Notwithstanding plaintiffs' projections, the September 1997 listing of ABT as overfished did not lead to a 40% to 80% reduction in the United States' TAC allowance for ABT. Withholding judicial review of Count II at this time will not result in any significant expenditure of funds or immediate harm to plaintiffs. Failing to satisfy both fitness and hardship, Count II is not ripe for review at this time.

Count III presents a closer issue with respect to the hardship element. The presence or absence of a significant economic impact upon plaintiffs implicates both the hardship prong as well as the underlying legitimacy of the certification that the May 1, 1998 guideline fell within the exclusion of 5 U.S.C. § 604 ("section 604").[3] Plaintiffs point out that the May 1, 1998 guideline will result in costs to fishermen including investments in new fishing gear and restrictions on the level of fishing. (Docket Entry # 1, ¶ 134). On the other hand, the threatened 40% to 80% reduction in the United States' TAC allowance resulting from the May 1, 1998 guideline appears remote. In light of plaintiffs' allegations, however, and the showing of fitness, *see Ernst & Young v. Depositors Economic Protection Corporation,* 45 F.3d at 535, Count III is ripe for review.

As a collateral matter, the Secretary points out that the prospective intervener, National Audubon Society ("NAS"), represents that it is not affiliated with the Massachusetts Audubon Society, the plaintiff in *Massachusetts Audubon Society v. Daley,* Civil Action No. 97–12297–WGY. Accordingly, NAS cannot adequately protect its interest in protecting ABT through this alternate forum. Inasmuch as this court employed this reasoning in determining that NAS failed to make a satisfactory showing with respect to the third factor under Rule 24(a), Fed.R.Civ.P., as well as in determining the appropriateness of permissive intervention under Rule 24(b), Fed.R.Civ.P., NAS may file a motion for reconsideration. At all times, NAS remains free to seek leave to file *amicus curie* briefs which, absent a well-grounded objection, this court will fully and seriously consider.

## CONCLUSION

In accordance with the foregoing discussion, the motion to dismiss (Docket Entry # 9) is **ALLOWED** as to Count II without prejudice to plaintiffs seeking leave to amend the complaint to refile Count II once this claim is ripe. This court sug-

---

**3.** Section 604 allows the head of an agency to avoid the initial and final regulatory analysis by certifying that the rule will not "have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 604(b).

gests that such refiling take place within 30 days after issuance of the final implementing regulations and that the claim primarily challenge the regulations, as opposed to the September 1997 listing, under 16 U.S.C. § 1855(f).[4] The motion to dismiss (Docket Entry # 9) is **DENIED** as to Count III on the basis of ripeness. The parties shall appear for a scheduling conference on May 3, 1999, at 10:30 a.m.

4.   See footnote number one.